# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JACOBS SILVER K FARMS, INC., et al., | Cons. Case No.: 4:13-cv-535-EJL-CWD |
| Plaintiffs, | **MEMORANDUM DECISION AND ORDER** |
| vs. | |
| TAYLOR PRODUCE, LLC, et al., | |
| Defendants. | |
| AND RELATED COUNTERCLAIMS, CROSSCLAIMS, AND THIRD-PARTY CLAIMS. | |
| SUNRISE POTATO, LLC, | |
| Plaintiff, | |
| vs. | |
| TAYLOR PRODUCE, LLC, et al., | |
| Defendants. | |
| AND RELATED CROSSCLAIMS AND THIRDPARTY CLAIMS. | |
| GVO FARM SERVICES, INC., et al., | |
| Plaintiffs, | |
| vs. | |
| TAYLOR PRODUCE, LLC, et al., | |
| Defendants. | |

Before the Court in the above-entitled matter are the Third-Party Defendant's Motion to Dismiss the Third-Party Complaint and Motion to the Dismiss Amended Third-Party Complaint. The parties have filed their responsive briefing and the matter is ripe for the Court's consideration. Having fully reviewed the record herein, the Court finds that the facts and legal arguments are adequately presented in the briefs and record. Accordingly, in the interest of avoiding further delay, and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, the Motions shall be decided on the record before this Court without oral argument.

## FACTUAL AND PROCEDURAL BACKGROUND

This case arises under the Perishable Agricultural Commodities Act of 1930 ("PACA"). Plaintiffs, Jacobs Silver K Farms, Inc., Kirk M. Jacobs, a/k/a Kirk Jacobs Farms, and Reynolds Brothers, LLP (collectively "Plaintiffs"), are wholesale sellers of perishable agricultural commodities in Rexburg, Idaho. (Dkt. 23.) In October and November of 2013, Plaintiffs entered into contracts to ship certain produce to Defendant Taylor Produce, LLC in the total amount of $1,539,077.35. (Dkt. 23 at ¶ 8.) Defendant Taylor Produce, a commission merchant, dealer, or broker subject to PACA, accepted delivery of the produce allegedly making it a statutory trustee of a PACA trust held for the benefit of Plaintiffs in the amount of the contracts. Ultimately, Taylor Produce failed to pay Plaintiffs for the produce it received. As a result, Plaintiffs initiated this action against Taylor Produce, Alan Taylor Produce, and Alan L. Taylor, (collectively the "Taylor Defendants") for relief as provided for under PACA as well as breach of contract,

MEMORANDUM DECISION AND ORDER - Page 2

breach of fiduciary duty to PACA trust beneficiaries, and conversion/unlawful retention of PACA trust assets. (Dkt. 1, 23.)[1]

Plaintiffs further allege claims for conversion, unlawful retention, and alter ego of PACA trust assets against the other named Defendants: Idaho Potato Packers Corporation, Nonpareil Corporation, Nonpareil Farms Incorporated, Nonpareil Processing Corporation, and Nonpareil Dehydrated Potatoes Incorporated (collectively "IPP-Nonpareil"). (Dkt. 23.) These claims allege the produce received by Defendant Taylor Produce were PACA trust assets that were transferred to IPP-Nonpareil by Taylor Produce in breach of the PACA trust. As a result, IPP-Nonpareil was required to hold those assets in trust for the benefit of the Plaintiffs who were the PACA trust beneficiaries.

IPP-Nonpareil have filed a Third-Party Complaint and an Amended Third-Party Complaint alleging a third-party claim against, as relevant to this Motion to Dismiss, Silver K Trucking, LLC ("Silver K Trucking"). (Dkt. 35, 52.)[2] This third-party claim alleges that if IPP-Nonpareil are found to be liable for the claims brought against them by Plaintiffs, then IPP-Nonpareil are in turn entitled to subrogation/contribution recovery from Silver K Trucking because it too received PACA trust assets directly or indirectly from Taylor Produce with notice or knowledge that receipt of such assets was in breach

---

[1] This case has been consolidated with other cases alleging similar PACA claims against Taylor Produce, LLC: *Sunrise Potato, LLC v. Taylor Produce, LLC, et al.*, and Case No. 4:14-cv-00141-EJL and *GVO Farm Serv., Inc. v. Taylor Produce LLC, et al.*, 4:14-cv-247-EJL. (Dkt. 51, 70.) In those actions, Sunrise Potato alleges it delivered $2,113,406.78 and GVO Farm Services/VO Enterprises allege they collectively delivered $686,070.45 in produce to Taylor Produce.

[2] The Third-Party Complaint also names Christopher T. Abend Randi Abend Phillips as Third-Party Plaintiffs. (Dkt. 52.) GVO Farm Services, Inc. and VO Enterprises are named as Defendants additional in the Third-Party Complaint. (Dkt. 52.)

MEMORANDUM DECISION AND ORDER - Page 3

of the PACA trust by Taylor Produce. (Dkt. 52 at ¶ 23.) Silver K Trucking moves to dismiss the third-party claim against it, which the Court takes up in this Order. (Dkt. 53, 61.)

## STANDARD OF REVIEW

A motion to dismiss made pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a party's claim for relief. The Court's inquiry on such a motion is whether the allegations in a pleading are sufficient under applicable pleading standards. Federal Rule of Civil Procedure 8(a) sets forth minimum pleading rules, requiring only a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

A motion to dismiss will only be granted if the complaint fails to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted). Although "we must take all of the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555. Therefore, "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim." *Caviness v. Horizon Comm. Learning Cent., Inc.*, 590 F.3d 806, 811-12 (9th Cir. 2010) (citation omitted).

## DISCUSSION

**1.    Motion to Dismiss**

Silver K Trucking argues IPP-Nonpareil's third-party claim should be dismissed because there is no private right of action under PACA and the state law claim fails to state a cause of action. IPP-Nonpareil maintains that their third-party claim is properly brought under Idaho state law as well as an implied private right of action under PACA.

**A.    Private Right of Action Under PACA**

Silver K Trucking alleges that IPP-Nonpareil are not PACA trust beneficiaries and, therefore, cannot raise their third-party claim under PACA directly. (Dkts. 53, 61 at 2.) Further, Silver K Trucking argues IPP-Nonpareil cannot show an implied cause of action exists for their third-party claim under PACA. (Dkts. 53, 61 at 6.) IPP-Nonpareil counter that they as well as Silver K Trucking are both potentially liable to Plaintiffs under PACA's statutory trust remedy and that they have an implied private right of action under PACA to bring their third-party claim. (Dkt. 69 at 4, 13-17.) Silver K Trucking asserts PACA's text evidences Congress's intent to refuse a private right of action to any one not specifically identified; e.g., the Secretary of Agriculture or the PACA trust beneficiaries. (Dkt. 53 at 8.)

In considering the question of congressional intent, the Court begins with the text of the statute itself and presumes that "Congress expressed its intent through the statutory language it chose." *Logan v. U.S. Bank Nat. Ass'n*, 722 F.3d 1163, 1171 (9th Cir. 2013) (citations omitted). The Court finds the plain text of PACA does not expressly provide for a private right of action for anyone other than the Secretary of Agriculture and the PACA

MEMORANDUM DECISION AND ORDER - Page 5

trust beneficiaries. *See* 7 U.S.C. § 499e(a)-(c). PACA applies to dealings between buyers, sellers, and brokers of perishable agricultural commodities in wholesale quantities. 7 U.S.C. §§ 499a(b)(4)(A), (b)(6). One who fails to maintain the trust as required under § 499e(c) is liable to the trust beneficiaries. 7 U.S.C. § 499b(4). "Such liability may be enforced either (1) by complaint to the Secretary [of Agriculture]" as provided in PACA or (2) by a suit brought by trust beneficiaries to enforce payment from the trust in any court of competent jurisdiction. 7 U.S.C. § 499e(b), (c)(5). Thus, PACA does not expressly provide for a private right of action for anyone other than a trust beneficiary or the Secretary.

The Court further finds that Congress did not intend to create an implied private right of action under PACA to parties other than the Secretary of Agriculture or the PACA trust beneficiaries. Both sides cite to the four-factor test articulated in *Cort v. Ash*, 422 U.S. 66, 78 (1975) as the applicable analysis for determining whether a federal statutory scheme provides for an implied private right of action where not explicitly provided for in the statute's provisions. (Dkt. 53 at 7) (Dkt. 69 at 14.) There, the Supreme Court stated:

> In determining whether a private remedy is implicit in a statute not expressly providing one, several factors are relevant. First, is the plaintiff "one of the class for whose especial benefit the statute was enacted,"- that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?

*Cort*, 422 U.S. at 78 (citations omitted). This framework, however, has since been refined to analyzing the issue by focusing on the determinative factor of "whether Congress intended to create, either expressly or by implication, a private cause of action." *Logan*, 722 F.3d at 1170 (quoting *Touche Ross & Co. v. Redington*, 442 U.S. 560, 575-76 (1979)). The four *Cort* factors, however, remain a "useful guide to determining Congress's intent." *Id.* (quoting *Orkin v. Taylor*, 487 F.3d 734, 739 (9th Cir. 2007)).

IPP-Nonpareil argues that because the rights of contribution and subrogation among co-trustees existed in common law prior to Congress's enactment of PACA, that Congress must have intended to allow PACA trustees to seek these forms of equitable relief. (Dkt. 69 at 14.) Further, IPP-Nonpareil points out that the Ninth Circuit has recognized that ordinary trust principles apply to the extent they do not contradict PACA and, therefore, allowing contribution and subrogation claims is not inconsistent with PACA's purpose. (Dkt. 69 at 14-17.) Silver K Trucking asserts that neither the legislative history nor the *Cort* factors support finding an implied right of action as alleged by IPP-Nonpareil. (Dkt. 53 at 9-10.)

PACA was enacted in 1930 "to prevent unfair business practices and promote financial responsibility in the fresh fruit and produce industry." *Boulder Fruit Exp. & Heger Organic Farm Sales v. Transportation Factoring, Inc.*, 251 F.3d 1268, 1270 (9th Cir. 2001) (citing *Sunkist Growers, Inc. v. Fisher*, 104 F.3d 280, 282 (9th Cir. 1997) (citing *Farley & Calfee, Inc. v. USDA*, 941 F.2d 964, 966 (9th Cir. 1991)). Congress amended the statute in 1984 to create the PACA trust:

> Perishable agricultural commodities received by a commission merchant, dealer, or broker in all transactions, and all inventories of food or other products derived from perishable agricultural commodities, and any receivables or proceeds from the sale of such commodities or products, shall be held by such commission merchant, dealer, or broker in trust for the benefit of all unpaid suppliers or sellers of such commodities or agents involved in the transaction, until full payment of the sums owing in connection with such transactions has been received by such unpaid suppliers, sellers, or agents.

*Id.* (quoting § 499e(c)(2); 7 C.F.R. § 46.46 (2000)). "This provision imposes a 'non-segregated floating trust' on the commodities and their derivatives, and permits the commingling of trust assets without defeating the trust. Through this trust, the sellers of the commodities maintain a right to recover against the purchasers superior to all creditors, including secured creditors." *Endico Potatoes, Inc. v. CIT Group/Factoring, Inc.*, 67 F.3d 1063, 1067 (2d Cir. 1995) (citations omitted).

PACA's purpose is "to ensure payment to the unpaid seller in the perishable agricultural commodities industry." *Tanimura & Antle, Inc. v. Packed Fresh Produce, Inc.*, 222 F.3d 132, 138 (3rd Cir. 2000); *see also* 7 U.S.C. § 499e(c). IPP-Nonpareil's third-party claims here do not relate or further PACA's purpose. Instead, these are private claims by non-trust beneficiaries against other non-trust beneficiaries. While the Ninth Circuit has recognized that general trust principles may apply to questions involving the PACA trust where those principles do not directly conflict with PACA, there is nothing in the language of PACA or its purpose, legislative history, legislative scheme, or Congressional intent to support a conclusion that Congress intended for an implied

private right of action under PACA as alleged in the third-party claim here. *Boulder Fruit*, 251 F.3d at 1271 (citing *Sunkist*, 104 F.3d at 282).

Based on the foregoing, the Court finds there is no expressed or implied private right of action available for IPP-Nonpareil to use to raise their third-party claim under PACA. Accordingly, Silver K Trucking's Motion to Dismiss is granted in this respect.

### B.  Idaho State Law Claim For Contribution/Subrogation

IPP-Nonpareil's Third-Party Complaint asserts an equitable contribution/subrogation claim under Idaho's common law against Silver K Trucking. (Dkt. 52.) IPP-Nonpareil argues that the Court has supplemental jurisdiction over this state law cause of action which is not preempted by PACA. (Dkt. 69 at 7-13.) Silver K Trucking argues because neither it nor IPP-Nonpareil are trustees of the PACA trust, they do not share any common law burden of indebtedness necessary for contribution and/or subrogation equitable remedies. (Dkt. 73 at 4-6.) IPP-Nonpareil maintains its claim is viable because they have alleged that Silver K Trucking's receipt of trust property was taken subject to the PACA trust because Silver K Trucking had notice of the trust when it received the trust property. (Dkt. 83 at 3.)

#### 1.  PACA is a Non-Exclusive Remedy

"It is well-established that Congress has the power to preempt state law." *Montalvo v. Spirit Airlines*, 508 F.3d 464, 470 (9th Cir. 2007) (citing U.S. CONST. ART. VI, cl. 2; *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516 (1992)). The Supremacy Clause of the United States Constitution, Article VI, Clause 2, declares that "the laws of the United States ... shall be the supreme law of the land," thereby "invalidat[ing] state

MEMORANDUM DECISION AND ORDER - Page 9

laws that interfere with, or are contrary to, federal law." *Goodspeed Airport, LLC v. East Haddam Inland Wetlands and Watercourses Com'n*, 681 F.Supp.2d 182, 199 (D. Conn. 2010) (quoting *Air Transp. Ass'n of Am., Inc. v. Cuomo*, 520 F.3d 218, 220 (2d Cir. 2008)). When considering a claim of federal preemption, a court's principal focus is discerning whether Congress intended to displace an area of state law. *Id.* (citing *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372 (2000); *Pacific Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*, 461 U.S. 190, 203 (1983)). "Federal law will preempt state laws that interfere[s] with, or are contrary to, federal law only if that was the clear and manifest purpose of Congress." *Johnson v. Rancho Santiago Comm. Coll. Dist.*, 623 F.3d 1011, 1022-23 (9th Cir. 2010) (citations and quotations omitted).

Preemption may be either express or implied. *Montalvo*, 508 F.3d at 470. "Congress' intent may be 'explicitly stated in the statute's language or implicitly contained in its structure and purpose.'" *Id.* (quoting *Cipollone*, 505 U.S. at 516) (citation omitted). There are two types of implied preemption: conflict preemption and field preemption. Conflict preemption exists when a state law actually conflicts with federal law or when a state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress in enacting the federal law. *See Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 95 (1983); *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 373 (2000). Field preemption occurs when Congress indicates in some manner an intent to occupy a given field to the exclusion of state law or, when federal law so thoroughly occupies a legislative field "as to make reasonable the inference that Congress left no room for the States to supplement it." *Cipollone*, 505 U.S. at 516 (citing *Fidelity*

*Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 153 (1982)). The Court finds that PACA does not preempt the state law claim raised against Silver K Trucking in this case.

PACA's remedies are in addition to other remedies available at common law or by state statute. *See Logan v. Tiegs*, No. CV03-435-BR, CV 03-470-BR, 2004 WL 2851949, at * 19-20 (D.Or. Dec. 13, 2004) (citing *Rothenberg v. H. Rothstein & Sons*, 183 F.2d 524, 528 (3rd Cir. 1950) (Where a state statute of frauds provision renders a contract void it precludes the use of the voided contract in an a PACA enforcement case but where the provision is procedural and does not void the disputed contract, the contract can be used in a PACA case)); *see also United Potato Co. v. Burghard & Sons, Inc.*, 18 F.Supp.2d 894, 898 (N.D. Ill. 1998) (discussing *Rothenberg's* holding with regard to the applicability of a statute of frauds provision in PACA cases). The remedies provision of PACA, 7 U.S.C. § 499e, provides: "this section shall not in any way abridge or alter the remedies now existing at common law or by statute, and the provisions of this chapter are in addition to such remedies." 7 U.S.C. § 499e(b). This provision serves PACA's "broad remedial goal" of adding "a remedy beyond those already provided by the states and other statutes." *United Potato*, 18 F. Supp.2d at 899.

Other courts have likewise held that the broad remedial statement in 7 U.S.C. § 499e(b) and the policy behind the statute support the finding that the rights and remedies available at common law are preserved under PACA. *See Tanimura & Antle, Inc. v. Packed Fresh Produce, Inc.*, 222 F.3d 132, 137-38 (3rd Cir. 2000) (considering a seller's private right of action seeking an injunction to enforce payment under the trust in aid of trust beneficiaries). Section 499e(c)(5) does not contradict this finding as it does

not speak to permissible remedies but, instead, simply establishes jurisdiction over specific actions brought by either the Secretary of Agriculture or the trust fund beneficiaries. *Id.* at 138.

Based on the foregoing, the Court finds that remedial nature of the PACA statute does not preclude or preempt the state law claim brought by IPP-Nonpareil here.

### 2. Third-Party Contribution/Subrogation Claim

Silver K Trucking also argues the contribution/subrogation claim fails because it and IPP-Nonpareil are not "trustees" under general principles of trust law and, therefore, they do not share the same obligations necessary to assert a constructive trust theory. (Dkt. 73 at 5.) IPP-Nonpareil asserts it has an implied right of action for equitable contribution/subrogation because it and Silver K Trucking share the same liabilities under the PACA trust in this case. (Dkt. 69 at 9) (Dkt. 83.)

"Subrogation is an equitable principle based on the general theory that one compelled to pay for damages caused by another should be able to seek recovery from that party." *Van Horn v. Nelson*, 2002 WL 32864540, at *5 (Idaho October 22, 2002) (citing *May Trucking v. International Harvester Co.*, 543 P.2d 1159 (Idaho 1975)). "Subrogation, in its broadest sense, is the substitution of one person for another, so that he may succeed to the rights of the creditor in relation to the debt or claim and its rights, remedies and securities."*Id.* (quoting *Houghtelin v. Diehl*, 277 P. 699, 700 (Idaho 1929)).

Contribution, on the other hand, has been defined as: "When there are two or more parties bound in the same degree by a common burden, equity demands, as between themselves, that each shall discharge a proportionate share, and when one of such parties

has actually paid or satisfied more than his fair share of the burden, he is entitled to a contribution from each and all of the others similarly bound, in order to reimburse him for the excess paid over his share, and thus to equalize their common burden." *Shattuck v. Ellis*, 288 P. 162, 163 (Idaho 1930) (quoting 5 Pomeroy's Equity Jurisprudence (4th Ed.) § 2338, p. 5169). "To entitle one to contribution, the payment must be compulsory in the sense that the party paying was under legal obligation to pay." *Id.* (citation omitted).

The parties in this case disagree on the law concerning the imposition of a constructive trust upon a third-party transferee. Silver K Trucking cites to *United States v. Pegg*, which states:

> The Restatement of Restitution § 160 (1937)...describes the nature of a constructive trust: "[W]here a person holding title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it, a constructive trust arises. A constructive trust is thus an equitable remedy compelling a person who has property to which he is not justly entitled to transfer it to the person entitled.

*United States v. Pegg*, 782 F.2d 1498, 1500 (9th Cir. 1986) (citations omitted). In *Pegg* the court determined that "three conditions are necessary for a plaintiff to establish a constructive trust for its benefit: the existence of a res (some property or some interest in property), the plaintiff's right to that res, and the defendant's gain of the res by fraud, accident, mistake, undue influence or other wrongful act." *Id.* (applying California law) (citation omitted).

IPP-Nonpareil filed a sur-reply brief on this issue arguing that because Silver K Trucking received PACA trust property knowing of the breach of the trust, Silver K Trucking took the trust property subject to a constructive trust and is therefore a "trustee" under general trust law as well as both state and federal common law. (Dkt. 83 at 2-4.) IPP-Nonpareil cites to *Deer Creek, Inc. v. Clarendon Hot Springs Ranch, Inc.*, 688 P.2d 1191, 1199 (Idaho App. 1984) which involved a trustee's transfer of three parcels of property belonging to a trust in violation of the trust instrument to a transferee who had knowledge of the violation. There, the Idaho court recognized that where trust property is transferred in violation of the terms of the trust instrument, a transferee with knowledge of the violation does not take free and clear title to the property. Rather, the transferee becomes the constructive trustee of the property and has the same duties as the original trustee to hold the trust property in trust for the benefit of the trust's beneficiaries. *Id.* IPP-Nonpareil also cite to two Second Circuit federal cases which are in accord. (Dkt. 83 at 5.)

The Court agrees with the law as stated by IPP-Nonpareil in regards to third-party transfers of trust property. *See Taylor v. Maile*, 127 P.3d 156, 164 (Idaho 2005) (discussing the Restatement (Second) of Trusts § 326 (1969) and Idaho case law). A transferee who knows that trust property was transferred to it in violation of the trust must hold the trust property subject to the terms of the trust just as if they are the original trustee. *Id.* This rule, however, does not save IPP-Nonpareil's claim from dismissal here.

The Third-Amended Complaint does not allege facts which give rise to a plausible claim for contribution/subrogation against Silver K Trucking. (Dkt. 52.) In fact, there are no factual allegations made concerning Silver K Trucking in the Third-Amended Complaint. The Third-Amended Complaint instead makes only conclusory allegations that Silver K Trucking is believed to have been the "recipient and trustee of 'PACA Trust Assets'" and states:

> If liability is imposed on any or all of the Third-party Plaintiffs as a result of the matters alleged in the Complaint, such Third-party Plaintiffs are entitled to be subrogated to all the claims of the Plaintiffs that could have been asserted against Trucking and DOES I-X (collectively, the "Third-party Defendants") based on, and as a result of, their receipt of PACA Trust Assets directly or indirectly from Defendant Taylor Produce, LLC ("Taylor Produce") with notice or knowledge that their receipt thereof constituted a breach of trust by Taylor Produce.
>
> If liability is imposed on any or all of the Third-party Plaintiffs as a result of the matters alleged in the Complaint, the Third-party Defendants, and each of them, have an equitable duty of contribution to such Third-party Plaintiffs with respect to their liability, based on the relative amount of PACA Trust Assets held by each party to this civil action adjudged to be a trustee of PACA Trust Assets and the total amount of PACA Trust Assets such party would otherwise be entitled to recover from other parties, if any.

(Dkt. 52 at ¶¶ 12, 23-24.) The Third-Amended Complaint also references the Plaintiffs' Complaint. There are, however, no facts in the Plaintiffs' Complaint concerning Silver K Trucking. (Dkt. 1, 23.)[3] The only facts relating to conduct by Silver K Trucking appear in IPP-Nonpareil's brief in opposition to the Motion to Dismiss. There, IPP-Nonpareil states:

---

[3] The Court also reviewed the Complaints filed in the consolidated actions and found those documents likewise contained no factual allegations concerning Silver K Trucking.

> Upon Nonpareil's information and belief, Taylor Produce transferred a substantial portion of those proceeds to Silver K Trucking as payment for services in transporting the produce. Silver K Trucking, therefore, received monies which Taylor Produce should have instead paid Silver K and Sunrise.
>
> As a third-party service provider for PACA trustee Taylor Produce, Silver K Trucking was not entitled to receive any PACA trust monies to the extent an unpaid PACA beneficiary was entitled to payment. And because Taylor Produce paid Silver K Trucking before Silver K and Sunrise were paid in full, the payments received by Silver K Trucking were made in beach of the PACA trust.

(Dkt. 69 at 5-6.)[4]

In order to survive a motion to dismiss, however, the complaint must state a plausible claim for relief. *Iqbal*, 556 U.S. at 679. "In determining the propriety of a Rule 12(b)(6) dismissal, a court may not look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss." *Schneider v. Cal. Dept. of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) (citation omitted); *see also* 2 Moore's Federal Practice, § 12.34[2] (Matthew Bender 3d ed.) ("The court may not ... take into account additional facts asserted in a memorandum opposing the motion to dismiss, because such memoranda do not constitute pleadings...."). The Third-Party Complaint here does not allege facts to support its state law claim for contribution/subrogation against Silver K Trucking. Because there are no factual allegations concerning Silver K Trucking's receipt of PACA trust assets contained within

---

[4] "As further alleged by Nonpareil, because Silver K Trucking has retained monies improperly paid to it by Taylor Produce in breach of trust, Silver K Trucking is also liable as a PACA trustee, or obligor, against whom Silver K and Sunrise should be enforcing the PACA trust." (Dkt. 69 at 2-3.)

the four corners of the Third-Party Complaint itself, the Court will grant the Motion to Dismiss.

**2.      Leave to Amend**

Nonpareil requests leave to amend the Complaint in the event the Court grants the Motion to Dismiss this claim. Federal Rule of Civil Procedure 15(a) provides that, once a responsive pleading has been served, a party may amend its pleading "only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a)(2). The Ninth Circuit Court of Appeals recognizes that "the underlying purpose of Rule 15 [is] to facilitate [a] decision on the merits, rather than on the pleadings or technicalities," and, therefore, "Rule 15's policy of favoring amendments to pleadings should be applied with extreme liberality." *Chudacoff v. University Med. Cent. of Southern Nev.*, 649 F.3d 1143, 1152 (9th Cir. 2011) (quoting *United States v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981)).

The decision whether to grant or deny a motion to amend pursuant to Rule 15(a) rests in the sole discretion of the trial court. The four factors that are commonly used to determine the propriety of a motion for leave to amend are: 1) undue delay, bad faith or dilatory motive on the part of the movant; 2) repeated failure to cure deficiencies by amendments previously allowed; 3) undue prejudice to the opposing party by virtue of allowance of the amendment; and 4) futility of amendment. *C.F. ex rel. Farnan v. Capistrano Unified Sch. Dist.*, 654 F.3d 975, 985 n. 5 (9th Cir. 2011) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

However, "[t]hese factors . . . are not of equal weight in that delay, by itself, is insufficient to justify denial of leave to amend." *Webb*, 655 F.2d at 979 ("The mere fact that an amendment is offered late in the case is . . . not enough to bar it."); *Bowles v. Beade*, 198 F.3d 752, 758 (9th Cir. 1999). "Only where prejudice is shown or the movant acts in bad faith are courts protecting the judicial system or other litigants when they deny leave to amend a pleading." *Webb*, 655 F.2d at 980 (citation omitted). The Ninth Circuit has held that although all these factors are relevant to consider when ruling on a motion for leave to amend, the "crucial factor is the resulting prejudice to the opposing party." *Howey v. United States*, 481 F.2d 1187, 1189 (9th Cir. 1973). Indeed, prejudice is the touchstone of the inquiry under Rule 15(a). *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). Ultimately, "[u]nless undue prejudice to the opposing party will result, a trial judge should ordinarily permit a party to amend its complaint." *Howey*, 481 F.2d at 1190.

The Court finds leave to amend in this case would be futile as to the PACA claims. There is no private right of action available to IPP-Nonpareil under PACA to bring their third-party claims. As such, leave to amend is denied on the PACA claims.

As to the state law claim, however, the Court will grant the request for leave to amend as it cannot be said at this time that it would be futile for IPP-Nonpareil to state a plausible claim for contribution and/or subrogation against Silver K Trucking. In doing so, the Court makes no determination at this time as to whether the facts alleged by IPP-Nonpareil in their briefing are sufficient to overcome a future Rule 12(b)(6) motion or that the law supports their claim. At this stage, the Court concludes only that IPP-

Nonpareil's state law claim is not futile and leave to amend is appropriate. Accordingly, leave to amend as to the state law claims is granted.

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED that the Motions to Dismiss (Dkt. 53 and 61) are **GRANTED**. The Third-Party Complaint and Amended Third-Party Complaint (Dkt. 35, 52) are **DISMISSED** as to the claim against Silver K Trucking.

IT IS FURTHER ORDERED that Defendants shall have until on or before **May 4, 2015** in which to file their Second Amended Third-Party Complaint as to their State Law Claim against Silver K Trucking.

DATED: **March 30, 2015**

Honorable Edward J. Lodge
U. S. District Judge